# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| MELISSA WILLIAMS,<br><br>Petitioner,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration,<br><br>Respondent. | Case No.: 1:13-cv-00049-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Now pending before the Court is Melissa Williams's Petition for Review (Docket No. 1), seeking review of the Social Security Administration's final decision to deny her claim for Title II Social Security Disability benefits and Supplemental Security Income payments. The action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

On or around March 24, 2010, Melissa Williams ("Petitioner") filed an application for Social Security Disability benefits and Supplemental Security Income benefits, alleging a disability onset date of December 10, 2009. Petitioner's claims were initially denied on June 4, 2010 and, again, on reconsideration on August 5, 2010. On August 23, 2010, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On November 3, 2011, ALJ John T. Molleur held a hearing in Boise, Idaho, at which time Petitioner, represented by attorney Jacob Bernhardt, appeared and testified. A vocational expert, Polly A. Peterson, Ph.D., also appeared and testified at the hearing.

On December 12, 2011, the ALJ issued a decision denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. Petitioner timely requested review from the Appeals Council on February 13, 2011. On November 27, 2012, the Appeals Council denied Petitioner's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted her administrative remedies, Petitioner timely files the instant action, arguing that the ALJ erred (1) by failing to properly assess Petitioner's residual functional capacity; (2) in rejecting Petitioner's credibility; and (3) by failing to evaluate all of Petitioner's severe mental impairments. *See* Pet.'s Brief, pp. 7-14 (Docket No. 14). Petitioner therefore requests that the Court reverse the ALJ's decision or, alternatively, remand the case for further proceedings. *See id.* at pp. 14-15; *see also* Pet. for Review, p. 2 (Docket No. 1).

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human*

**MEMORANDUM DECISION AND ORDER - 2**

*Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III.  DISCUSSION

### A. Sequential Processes

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  SGA is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Petitioner has not engaged in substantial gainful activity since December 10, 2009, Petitioner's application date (AR 15).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).

**MEMORANDUM DECISION AND ORDER - 4**

An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments: (1) diabetes mellitus, (2) degenerative disc disease of the lumbar spine, (3) obesity, (4) bipolar I disorder, and (5) anxiety disorder. (AR 13-14).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id*. Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. (AR 14-16).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's

**MEMORANDUM DECISION AND ORDER - 5**

past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except she (1) cannot climb ropes, ladders, and scaffolds; (2) can occasionally crouch; (3) can frequently balance, kneel, stoop, crawl, and climb ramps or stairs; (4) is limited to frequent exposure to extreme cold and vibrations; (5) cannot work in close coordination with others; and (6) can only tolerate occasional decision-making and occasional changes in the work setting. (AR 16-19). Due to these limitations, the ALJ further concluded that Petitioner is unable to perform any past relevant work. (AR 19-20).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled. Here, the ALJ found that Petitioner is capable of performing light work found in significant numbers within the relevant national/regional economy, including basket filler, cannery worker, and photocopy machine operator. (AR 20-21). Therefore, based on Petitioner's age, education, work experience, and residual functional capacity, the ALJ concluded that Petitioner was not under a disability as

defined in the Social Security Act from December 10, 2009 through the date of his December 12, 2011 decision. (AR 21).

B.  **Analysis**

   1.  Petitioner's Alleged Impairments and Her Residual Functional Capacity

Petitioner contends that, during the November 3, 2011 hearing, she testified that her diabetes had led medical providers to advise her to keep her feet elevated, but that the ALJ did not include any corresponding limitation when evaluating her residual functional capacity. *See* Pet.'s Brief, pp. 7-8 (Docket No. 14) (citing (AR 17) (ALJ concluding that Petitioner's "follow-up treatment records do not contain such instructions")). According to Petitioner, had the ALJ properly considered such evidence and, likewise, included that limitation in his residual functional capacity findings, he would have granted Petitioner's claim because such an impairment would preclude all employment. *See id*. at pp. 10-11. The record, however, suggests that Petitioner overstates any factual basis for that argument.

Preliminarily, Petitioner states in her briefing that the additional hospital records submitted to the Appeals Council (after "the ALJ would not wait for the record to be completed" (*see id*. at p. 8)) were "never reviewed by the Social Security Administration, as the Appeals Council declined the request for review." *Id*. at p. 9. But it appears that she is mistaken in that regard, as within its "Notice of Appeals Council Action," the Appeals Council stated that it "considered the reasons [Petitioner] disagree[d] with the [ALJ's] decision and the *additional evidence* listed on the enclosed Order of Appeals Council [(including the records Petitioner now claims support a heretofore unrecognized impairment(s))], but nonetheless "found that *this information* does not provide a basis for changing the [ALJ's] decision." (AR 1-2) (emphasis

**MEMORANDUM DECISION AND ORDER - 7**

added). In other words, the records submitted to the Appeals Council following the ALJ's December 12, 2011 decision were considered by the Appeals Council.

But more importantly, the undersigned's separate consideration of those records (in addition to Petitioner's references to the already-existing treatment notes in the record, along with her arguments related thereto) reveals that substantial evidence exists to support the ALJ's conclusion concerning Petitioner's residual functional capacity, which is the relevant measuring stick for this appeal.

First, the *new* evidence that Petitioner cites is a single, hand-written, September 23, 2011 "progress note" speaking to a "foot infection." *See* Pet.'s Brief, p. 9 (Docket No. 14) (citing (AR 634)). That nurse's note indicates, in relevant part, that she "will encourage [patient] to keep it elevated" and that she will "check on [patient] on Monday." (AR 634). However, it is not clear that this single notation, without more,[1] is some sort of medically-recognized physical limitation that must be taken into account vis à vis Petitioner's residual functional capacity assessment. That is, the record could easily be read as a nurse's recommendation regarding a discrete course of treatment for an isolated medical condition, rather than something more permanent and ongoing. Indeed, Petitioner points to no subsequent progress/treatment note addressing either the status of her physical condition post-September 2011, or, more generally, her alleged

---

[1] The Court acknowledges that, at the November 3, 2011 hearing, Petitioner *also* testified as to her consistent need to keep her feet elevated to assist in the healing process. *See* (AR 51-52, & 66) ("Yeah, the Room Clinic person, she just told me that I need to keep it elevated as much as possible because it does help with the . . . . Yeah, they've got to be up to where they're up. Yeah, because I've got to get them up. . . . . Yeah, I, like, have to get them upon on the chair."). Except, Petitioner's overall credibility must be taken into account when considering such statements as well. The ALJ did this, determining that Petitioner's statements "concerning the intensity, persistence, and limiting effects" of Petitioner's symptoms were not credible. *See* (AR 17); *see also infra*.

**MEMORANDUM DECISION AND ORDER - 8**

continuous need to elevate her feet throughout the day to alleviate a chronic condition. Simply put, the highlighted progress note, alongside the otherwise scant record, offers little by way of support for Petitioner's arguments in this respect.

Second, the already existing evidence relied upon by Petitioner to buttress her appeal is similarly unpersuasive. *See* Pet.'s Brief, p. 10 (Docket No. 14). For example, the September 9, 2010 treatment note[2] from Tara Eberle, M.D., is the *next earliest* notation (more than a year before the above-referenced progress note) dealing with a medical provider's instruction that Petitioner care for her feet. (AR 585-86). And, Dr. Eberle's treatment note states that Petitioner received blisters from "wearing sandals" and walk[ing] during [the] day all day job searching," and advises Petitioner to "stay off [her] foot as pressure will make [it] worse." (AR 584-86). Further, the treatment advice pertained to Petitioner's condition at it existed at that time, and does not confirm a permanent impairment.[3] Additionally, the May 30, 2006, June 6, 2006, June 27, 2006, and November 9, 2006 treatment notes that Petitioner next focuses upon (*see* Pet.'s Brief, p. 10 (Docket No. 14) (citing (AR 334, 331, 326, 320 & 332)) – while no doubt speaking to the condition of her feet and the benefits of sitting down (but, still, with no clear-cut recommendation that she *elevate* her feet) – speak to a period of time that precedes Petitioner's alleged disability onset date by more than three years. In short, treatment notes discussing

---

[2] It appears that this treatment actually took place on or around September 3, 2010. (AR 578-86). Any difference as to the date is immaterial for these purposes.

[3] Furthermore, it should be noted that any medical suggestion that Petitioner limit her standing in order to heal a blister/ulcer and/or prevent swelling is not necessarily the equivalent of Petitioner's alleged impairment that she must *elevate* her feet. *See also supra*. To be sure, Petitioner's treatment notes following her visit to Dr. Eberle show an improving/healing condition with "careful foot care" and "appropriate foot wear." *See, e.g.*, (AR 576); *see also* (AR 574) (September 7, 2010 treatment note indicating that Petitioner exercises five times per week by walking).

**MEMORANDUM DECISION AND ORDER - 9**

Petitioner's similar condition during a time when she was admittedly not disabled and "on her feet 30-40 hours a week" working at Wal-Mart (AR 326), are immaterial toward discerning whether Petitioner is now disabled, owing to the fact that she must elevate her feet.

Third, responding to Petitioner's allegation that she had been instructed to elevate her foot, the ALJ examined the medical record for supporting documentation. (AR 17). Except, as suggested above, there were no such records detailing the limitation/impairment that Petitioner now asks this Court to find. *See id.* Instead, to treat her various conditions over the years, medical providers periodically advised Petitioner to, among other things, stay off her feet (and, at least *one* time, elevate her foot (*see supra*)). That such advice took place or, even, ultimately offered therapeutic benefits (*see* (AR 17) (". . . the follow-up notes show few residual problems from [Petitioner's foot ulceration] condition.")), does not operate as a finding of a medically-endorsed need to elevate her feet every single day as Petitioner contends here.

There is no question that, part and parcel with her diabetes (addressed by the ALJ (*see supra*)), Petitioner has suffered and may in the future suffer from diabetic foot ulcers that may affect her ability to work. However, the undersigned cannot agree with Petitioner that the ALJ failed to properly assess the full impact of her diabetic condition as reflected by the record. The incongruity between that record (in both what is stated and *not* stated therein, as the case may be) and Petitioner's allegations justifies a conclusion that substantial evidence supported the ALJ's rejection of Petitioner's claim that her feet needed to be elevated on an ongoing basis. Although certain references in the record may not have been given the weight Petitioner contends was warranted, the ALJ's consideration of such evidence was made in conjunction with all of the surrounding medical record and the applicable standards of law. Because the evidence can

reasonably support the ALJ's conclusion in this respect, there is no place for this Court to substitute its judgment for that of the ALJ's, even if this Court were persuaded that Petitioner's assessment of the record and the ALJ's handling of the same was the better of two different viewpoints, both supported by the same record.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.

      2.    <u>Petitioner's Credibility</u>

Petitioner also takes issue with the ALJ's challenge to her credibility.  *See* Pet.'s Brief, pp. 11-12 (Docket No. 14).  As the trier of fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight.  *See Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990).  In evaluating a claimant's credibility, the ALJ may consider claimant's reputation, inconsistencies either in testimony or between testimony and conduct, daily activities, past work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms.  *See Light v. Social Security Admin.*, 119 F.3d 789, 791 (9th Cir. 1997).  In short, "[c]redibility decisions are the province of the ALJ."  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  It should be noted, however, that to reject a claimant's testimony, the ALJ must make specific findings stating clear and convincing reasons for doing so.  *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

Here, the ALJ agreed with Petitioner that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but then went on to conclude that her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with [Petitioner's] residual function capacity

**MEMORANDUM DECISION AND ORDER - 11**

assessment." (AR 17). Petitioner correctly argues that "[s]uch a blanket statement does not satisfy the requirement to provide clear and convincing evidence" (Pet.'s Brief, p. 12 (Docket No. 14)).[4] However, the ALJ proceeded to list out the particular reasons for rejecting Petitioner's testimony concerning her alleged disability and inability to work.

In one such instance, the ALJ discussed how Petitioner's "work activity" suggested that she was, in fact, capable of performing full-time work (even after her alleged disability onset date). (AR 17). At the administrative hearing, Petitioner testified:

> Q: [What] period of time were you [at the food bank]? How many months were you – were you doing that?
>
> A: I started out part time in December of 2009.
>
> Q: And how long were you there part time before you started going four and a half days a week?
>
> A: About two months and then she started, "Can you come in and – can you come in and help me on these days," and she just started depending on me more because she was getting sick and then she just quit coming in at all.
>
> Q: So for about three months you were there four and a half days a week?
>
> A: And I just –
>
> Q: Is that – is that correct?
>
> A: Yes, sorry.
>
> Q: Okay.

---

[4] Respondent counters that Petitioner misstates the standard in this respect, stressing that the "[t]he ALJ must provide clear and convincing *reasons* supported by substantial evidence in the record to discredit a claimant whose record does not show evidence of malingering" – not "clear and convincing evidence" itself, as Petitioner puts forward in her briefing. *See* Resp't's Brief, p. 10 (Docket No. 15) (emphasis in original). Any distinction in this respect, while potentially valid, is immaterial toward considering Petitioner's appeal here.

**MEMORANDUM DECISION AND ORDER - 12**

> A: Yes, then I just couldn't – it just got to where I couldn't do it anymore. I just got way overwhelmed and I thought I could do it. I kept trying and I kept – I ended up putting a sign: food bank closed. And they finally just said that I needed to be there or – and I'm like, "You need to bring somebody in to help me. I cannot do this by myself," and they wouldn't. And I finally told Bambi, who was the bookkeeper, I said, "I can't do this." I said, "I'm working just as hard as everybody else. I'm here volunteering. Everyone else is getting paid." I said, "I'm working just as hard and just as many hours," and I'm like "It's ridiculous."
>
> Q: Did they offer you a paid position?
>
> A: Never. Never, and I'm finally just – I'm like – I told them, I said, "I can't do this. I'll work a couple more days if I can – if I can manage it, and then I'm done." I said, "I can't do this anymore." And I guess they ended up closing the food bank for about a week and they finally found somebody, but, of course, that person was paid.

(AR 58-60). From this, the ALJ reasonably deduced that, "[w]hile there were evidently paid staff on hand, [Petitioner] ultimately was volunteering 35 hours per week, and, based on her testimony, it appears that she would have been able to sustain such employment if she had not had to assume some of the managerial tasks." (AR 17). *See, e.g.*, *Burton v. Massanari*, 268 F.3d 824, 828 (9th cir. 2001) (as part of credibility assessment, ALJ considered claimant's work history and his admission that he left his job for reasons other than his alleged impairment); *Drouin v. Sullivan*, 966 F.2d 1255, 1259 (9th Cir. 1992) (finding ALJ did not err in considering that, "according to [the claimant's] own testimony, she did not lose her past two jobs because of pain"). Aside from generally objecting to the ALJ's overall credibility determination (*see* Pet.'s Brief, p. 12 (Docket No. 14)), Petitioner's appeal does not speak to this point.

Next, the ALJ indicated that the medical evidence did not support Petitioner's claims, particularly when that evidence painted a conflicting picture – namely, one of an individual

capable of working. *See* (AR 17-18) (citing (AR 510) (October 3, 2011 treatment note indicating that Petitioner "desired to return to work" with medical provider "will[ing to] provide letter stating she is able, notwithstanding being treated for MRSA); *see also supra*. The ALJ properly considered this absence of objective medical evidence, despite Petitioner's claims to the contrary, when assessing her credibility. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (lack of medical evidence cannot form sole basis for discounting pain testimony, but can be considered by ALJ in credibility analysis). While such a reality, considered separately, may not conclusively rebut Petitioner's claims of disability, when combined with the other reasons offered by the ALJ, they collectively support the ALJ's conclusions concerning Petitioner's credibility. *See* 20 C.F.R. § 416.929(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence, and other evidence."); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (holding that "contradictions between claimant's testimony and the relevant medical evidence" provided clear and convincing reason for ALJ to reject plaintiff's subjective symptom testimony). Besides referring to her previously-asserted argument concerning the need to elevate her feet (*see* Pet.'s Brief, p. 12 (Docket No. 14)), Petitioner's appeal, again, does not speak to this point.

     Finally, the ALJ considered Petitioner's daily activities in his credibility analysis – if a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may question that claimant's allegations. *See Burch*, 400 F.3d at 681. In contrast to Petitioner's complaints of social difficulties and an avoidant personality, the ALJ referenced evidence in the record indicating that Petitioner has gone bowling, is capable of

shopping in stores, has done volunteer work, regularly attends women's groups and church, lives with others, and currently is a caregiver for an elderly woman. (AR 18) (citing (AR 230, 239, 243, 444, 446, 449-450, 522, 548, & 565)); *see Fair*, 885 F.2d at 602 ("[I]f a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain."). The ALJ could properly conclude on that evidence that Petitioner's symptoms are not as severe as alleged; even so, in assessing Petitioner's residual functional capacity, the ALJ concluded that Petitioner *still* should not work in close coordination with others. (AR 16 & 18). Once again, Petitioner's appeal does not speak to this point.

Together, these reasons[5] offer clear and convincing explanations as to why the ALJ did not find Petitioner's testimony entirely credible. This is not to say, however, that this Court conclusively finds Petitioner not to be disabled under the applicable rules and regulations or that Petitioner does not suffer from chronic pain or significant anxiety; indeed, as expected Petitioner tries to identify conflicting evidence in support of her position. Which such conflicting evidence may not have carried the sway that Petitioner argues, the ALJ's decision to doubt Petitioner's credibility in denying disability benefits has clear and convincing reasons in support. As required by controlling law, the ALJ will not be second-guessed here. *See Batson v. Comm'r of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are

---

[5] The ALJ additionally found that Petitioner "has not always been compliant in her diabetes care." (AR 17). However, upon the Court's own examination of the parallel medical record (AR 533), the undersigned does not quite agree that Petitioner "unilaterally adjust[ed] her insulin dosage" and/or "refus[ed] to follow her provider's recommendation[s]." The ALJ's conclusion in that regard seems tenuously made and undermines the quality of the ALJ's decision but even so, the ALJ's alternate bases for testing Petitioner's credibility suffice.

**MEMORANDUM DECISION AND ORDER - 15**

upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.") (internal citations omitted). Therefore, the Court will not substitute its judgment when the evidence in the record can support the ALJ's findings.

    3.    <u>Petitioner's Severe Mental Impairments and Alleged Borderline Personality Disorder</u>

Regarding Petitioner's mental impairments, the ALJ found that Petitioner suffered from bipolar I disorder and anxiety disorder. (AR 13). Petitioner now argues that the ALJ failed to also evaluate the impact of her alleged borderline personality disorder. *See* Pet.'s Brief, p. 12 (Docket No. 14). Petitioner's arguments are misplaced.

First, Petitioner relies upon a single June 1, 2011 notation of a borderline personality disorder diagnosis from Deborah Butte, CNS. (AR 487-488).[6] Under the Social Security regulations, clinical nurse specialists like Ms. Butte fall into the category of "other sources who are *not* "acceptable medical sources." *See* 20 C.F.R. § 404.1513(d). While opinions from these sources are not acceptable direct evidence of an impairment, the regulations do allow the claimant to submit information from sources that are "not acceptable medical sources" to help the ALJ to determine the severity of an impairment and "understand how [the claimant's] impairment affects [the claimant's] ability to work." *See* 20 C.F.R. §§ 404.1513(d) & (e).[7]

---

    [6] Respondent argues that this diagnosis "originated as a 'tentative diagnosis' upon an initial assessment performed by Libby Engebrecht, LCSW, in February 2010." Resp't's Brief, p. 13 (Docket No. 15) (citing AR 442-443). However, the Court's own examination of that portion of the record shows a tentative diagnosis of "bipolar affective disorder," not borderline personality disorder. *See* (AR 442). The distinction, or relationship, between the two disorders is not discussed by the parties. The Court sees no purpose in speculating upon the matter, as the question is immaterial to the consideration of Petitioner's arguments in this discrete respect.

    [7] Further, in pertinent part, Social Security Ruling 06-03p states: "[t]he fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that

**MEMORANDUM DECISION AND ORDER - 16**

Except, here, Ms Butte's June 1, 2011 treatment note seems to be an incongruous inselberg against the backdrop of the remainder of the medical record and, even, Petitioner's underlying claims themselves. Though her briefing characterizes her alleged borderline personality disorder as "actually the main problem" (*see* Pet.'s Brief, p. 12 (Docket No. 14)), she points to no other medical records discussing the disorder or diagnosing her with the same. Along these lines, it is telling that Petitioner has alleged disability from impairments due to bipolar disorder, anxiety, post-traumatic stress disorder, and insulin dependent diabetes, but consistently absent from the record is any additional claim of disability resulting from a borderline personality disorder. *See, e.g.*, (AR 222, 285-286, & 448).

Second, Ms. Butte's opinion is inconsistent with other medical evidence from "acceptable medical sources." *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (lack of objective medical findings, treatment notes, and rationale to support opinion is sufficient reason for rejecting that opinion). For example, concluding that Petitioner "may best be diagnosed" with bipolar I disorder and anxiety disorder (with mixed features of compulsive checking and panic), licensed psychologist, David R. Starr, Ph.D., opined:

> Mental status exam revealed a well oriented, young woman who could pay attention, remember, and follow directions. She could persist in her thinking. She demonstrated a strong fund of information and she can think abstractly. Her judgment may be impulsive. She is, nevertheless, capable of managing funds.

(AR 448-451). The ALJ relied upon Dr. Starr's findings in reaching his disability determination, while nevertheless concluding that Petitioner "can only handle occasional decision-making and

---

opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source.'" SSR 06-03p, available at 2006 WL 2329939. However, this ruling also recognizes that, depending on the particular facts in a case, a "opinion from a medical source who is not an 'acceptable medical source' *may outweigh* the opinion of an 'acceptable medical source' . . . ." *Id*. (emphasis added).

**MEMORANDUM DECISION AND ORDER - 17**

occasional changes in the work setting." (AR 15 & 18-19) ("His opinions are generally consistent with his limited findings upon mental status examination, as well as the results of the other mental status examinations in the file."). Moreover, Mack Stephenson, Ph.D., identified Petitioner as suffering from "affective disorders" and "anxiety-related disorders" (but not indicating any "personality disorders"), with only mild limitations in maintaining social functioning, concentration, persistence, and pace. (AR 465 & 475). The ALJ also relied upon Dr. Stephenson's findings in reaching his disability determination, but, "based on the evidence" nevertheless concluded "that a moderate limitation is more appropriate in the areas of social functioning and concentration, persistence, and pace." (AR 15); *see also* (AR 19). These limited departures from these medical providers' opinions (in Petitioner's favor, even) further reflect a reasoned consideration of the record as a whole when addressing the issue of whether Petitioner is disabled under the Social Security Act.[8]

In this appeal setting, the Court does not resolve the conflicting opinions and ultimately decide whether Petitioner is once-and-for-all disabled as that term is used with the Social security regulations. Rather, this Court must determining whether the ALJ's decision in determining that Petitioner is not disabled from December 10, 2009 through the date of his December 12, 2011 decision is supported by the record. To meet that measure, given the

---

[8] Petitioner further refers to the treatment notes from PSR worker, Lisa Tovar, and her case manager, Nse Ette, as somehow supporting a borderline personality disorder. *See* Pet.'s Brief, p. 13 (Docket No. 14). However, Ms. Tovar only described Petitioner as "bipolar II" and "chronic PTSD"; similarly, Ms. Ette only characterized Petitioner with "bipolar" and "PTSD." (AR 404 & 276). Neither mentioned borderline personality disorder. *See id.* And, with respect to their opinions concerning Petitioner's limitations (suggesting that Petitioner is mentally unable to work), the ALJ found them to be inconsistent with the medical evidence in the record as well, and also at odds with Petitioner's admitted work history up through and following her alleged disability onset date. (AR 19).

**MEMORANDUM DECISION AND ORDER - 18**

conflicting medical opinions, the ALJ must offer specific and legitimate reasons, supported by substantial evidence in the record, for rejecting Ms. Butte's, Ms. Tovar's, and Ms. Ette's medical opinions. Because the ALJ offered germane reasons for doing so, and the evidence can reasonably support the ALJ's conclusion in these respects, this Court will not substitute its judgment for that of the ALJ's. *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019.

### IV. CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *See Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is that put forward by the ALJ, a reviewing court may not substitute its interpretation for that of the ALJ. *See Key*, 754 F.2d at 1549.

The evidence upon which the ALJ relied can reasonably and rationally support his conclusions, despite the fact that such evidence may be susceptible to a different interpretation. It is not this Court's role to alter the ALJ's decision without some appropriate basis under the law for doing so, consistent with its role as a reviewing court only. Here, the ALJ's decision as to Petitioner's alleged disability is based on proper legal standards and supported by substantial evidence. Therefore, the Court concludes that the decision that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

Accordingly, the Commissioner's decision is affirmed.

///

///

## V. ORDER

Based on the foregoing, Petitioner's Petition for Review (Docket No. 1) is DENIED, the decision of the Commissioner is AFFIRMED, and this action is DISMISSED in its entirety, with prejudice.

DATED: **March 17, 2014**

Honorable Ronald E. Bush
U. S. Magistrate Judge